UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RONALD C. WILLIAMS,<br><br>      Petitioner,<br>  v.<br>E.K. McDANIELS, et al.,<br><br>      Respondents. | Case No. 3:10-cv-00805-MMD-VPC<br><br>ORDER |

This counseled, first-amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a state prisoner is before the Court for final disposition on the merits. (Dkt. no. 25.) Respondents have answered the petition (dkt. no. 45), and petitioner replied (dkt. no. 46).

**I. PROCEDURAL HISTORY AND BACKGROUND**

In May 2002, petitioner Ronald C. Williams ("Williams" or "petitioner") was charged with several counts including attempted murder, battery with use of a deadly weapon, and first-degree kidnapping with use of a deadly weapon in connection with stabbing his girlfriend multiple times (exhibits to first-amended petition, dkt. no. 25, Exh. 5).)[1] The state district court first granted Williams' request to represent himself. (Exh. 21.) However, Williams then moved for psychiatric and/or psychological testing; the court reappointed counsel and Williams underwent a competency evaluation. (Exhs. 31,

---

[1] All exhibits referenced in this order are exhibits to petitioner's first-amended petition (dkt. no. 25) and are found at dkt. nos. 26-31 and 47.

41 at 3.) Williams was found competent, he filed a second request to represent himself, but later withdrew the motion. (Exh. 43 at 4.)

On February 9, 2005, Williams then pled guilty to counts 1 and 3: attempted murder with the use of a deadly weapon; count 5: mayhem with the use of a deadly weapon; and count 7: child abuse and neglect with substantial bodily harm. (Exhs. 47, 48.) Four counts were dismissed. (*Id.*)

On February 16, 2005, Williams filed a proper person motion to dismiss his counsel and for the appointment of alternate counsel, and asked to withdraw his guilty plea. (Exh. 49.) The Court appointed substitute counsel. (Exh. 51 at 7-8.) Counsel Frank Kocka reviewed the record and informed the court that he did not identify any legal basis for Williams to withdraw his guilty plea. (Exh. 52 at 4.) The Court then denied the motion. (*Id.* at 9.) Williams filed another motion to represent himself and to withdraw his guilty plea. (Exh. 56.) The motion to withdraw the guilty plea was again denied, and Williams withdrew his motion for self-representation. (Exh. 60 at 10-12.)

The state district court sentenced Williams on August 29, 2005 as follows: count 1 — two consecutive terms of 76-240 months; count 3 — two consecutive terms of 76-240 months; count 5 — a consecutive term of 36-96 months; count 7 — a term of 36-120 months to run concurrently to count 1. (Exh. 61 at 32-33.) The judgment of conviction was filed on September 25, 2005. (Exh. 65.)

Williams appealed, and the Nevada Supreme Court affirmed his convictions. (Exhs. 62-64, 70.)

Williams then filed a proper person postconviction petition for a writ of habeas corpus in state district court. (Exh. 87.) The state district court denied the petition, and the Nevada Supreme Court remanded for an evidentiary hearing on the question of whether Williams' plea to child abuse and neglect with substantial bodily harm was knowing and voluntary. (Exh. 113 at 7-15.)

Pursuant to an evidentiary hearing, the state district court found that Williams' plea to count 7 was not knowing and voluntary. (Exh. 118 at 53.) After briefing, the court

dismissed the conviction on count 7 and filed an amended judgment of conviction on February 11, 2010. (Exh. 121 at 31; Exh. 124.)[2] The Nevada Supreme Court affirmed the state district court's order partially granting Williams' petition and dismissing the conviction on count 7. (Exh. 140.)

Williams filed a second state postconviction petition on April 4, 2011. (Exh. 145.) The Nevada Supreme Court affirmed the denial of the petition on May 9, 2012, and remittitur issued on June 5, 2012. (Exhs. 164, 165.)

Petitioner dispatched this federal petition for writ of habeas corpus on December 29, 2010. (Dkt. no. 1.) The Court appointed counsel and the first-amended petition was filed on September 5, 2012. (Dkt. no. 25.) Respondents have answered the three grounds. (Dkt. no. 45.).

## II.     LEGAL STANDARDS

### A.     Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

///

---

[2] The guilty plea agreement accurately stated that the offenses of attempted murder with the use of a deadly weapon and mayhem with the use of a deadly weapon were probationable. (Exh. 47.) However, neither the plea agreement nor canvass advised Williams that a psychosexual examination is required before probation is granted to a person convicted of child abuse and neglect. NRS § 200.508; 176A100. (Exhs. 47, 48.)

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

///

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 131 S.Ct. at 1398.

### B.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

5

proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401. The Supreme Court has specifically

reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### III.   DISCUSSION & ANALYSIS

#### A.   Ground 1

Petitioner alleges that his trial counsel, Paul Wommer, rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights. (Dkt. no. 25 at 14-22.) In ground 1(A) Williams argues that counsel was ineffective during plea negotiations. (*Id.* at 14-20.) He contends that his counsel failed to communicate "in any meaningful way" with him, failed to review the evidence with him, failed to conduct any investigation or discuss strategies and possible defenses. (*Id.* at 14.) Williams claims he felt threatened by his counsel to enter into the guilty plea agreement. (*Id.*)

Williams pleaded guilty upon the advice of counsel, thus he "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective] . . . and that there is a reasonable probability

///

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56-57, 59; *Lambert*, 393 F.3d at 980-981.

In affirming the denial this ground in Williams' state postconviction petition, the Nevada Supreme Court stated:

> First, appellant claimed that his trial counsel coerced his guilty plea when trial counsel told appellant that if he did not accept the guilty plea he could spend the rest of his life in prison. Appellant further claimed that trial counsel told him that he was in a "no-win" situation because the jury would believe the victim. Additionally, appellant claimed that trial counsel improperly allowed the district attorney to attend negotiation discussions without his consent. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. During the guilty plea canvass and in the guilty plea agreement, appellant affirmatively acknowledged that his guilty plea was not the product of coercion. The original charges included one count of first degree kidnapping — an offense carrying a potential life sentence — and an additional count of child abuse and neglect. Trial counsel's candid advice about the potential outcome of a trial and the strengths and weaknesses of the case, made after review of the discovery and a preliminary hearing, is not deficient. Appellant further failed to demonstrate that he was prejudiced by the district attorney's attendance at the negotiation discussions. Therefore, we conclude that the district court did not err in denying this claim.
>
> . . . Third, appellant claimed that trial counsel was ineffective for the following reasons: (1) failing to explain the circumstances of the guilty plea; (2) having a conflict of interest with appellant; and (3) failing to communicate with appellant. . . . Appellant failed to provide any specific facts or arguments in support of these claims. Thus, appellant failed to demonstrate that his trial counsel were ineffective in this regard, and the district court did not err in denying these claims.
>
> Fourth, appellant claimed that trial counsel was ineffective for failing to explain the consequences of the guilty plea, waiver of constitutional rights and right to appeal. Appellant further claimed that he did not understand the elements of the crimes of attempted murder with the use of a deadly weapon and mayhem with the use of a deadly weapon. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. The potential maximum terms of imprisonment were set forth in the written guilty plea agreement and set forth during the guilty plea canvass. The written guilty plea agreement further set forth the constitutional rights waived by entry of the guilty plea and specifically included information regarding the limited right to appeal. The elements of the offenses of the attempted murder counts and the mayhem count were set forth in the written guilty plea agreement. In signing the written guilty plea agreement, appellant affirmatively acknowledged that all of the elements, consequences, rights and waiver of rights were thoroughly explained to him by his trial counsel. Appellant failed to demonstrate that further information on any of these points would have had a reasonable probability of altering his decision to enter a guilty plea in the instant case. Therefore, we conclude that the district court did not err in denying these claims.

(Exh. 113 at 3-6 (internal footnotes omitted).)

The state-court record reflects the following: at the preliminary hearing, Williams' counsel indicated to the court that he had spoken to petitioner about the proceedings, about his right to testify and also told petitioner that he had looked at the discovery in his case. (Exh. 6 at 5-6.) At the change of plea hearing, Williams was thoroughly canvassed when he entered his guilty plea, and he indicated that he pleaded guilty knowingly and voluntarily. (Exh. 48.) The court set out the potential sentences Williams faced, and he indicated that he understood. (*Id.*) He signed the written guilty plea agreement, which also reflected that he pleaded guilty knowingly and voluntarily; the agreement also set forth the potential sentences. (Exh. 47.) Petitioner did ask the court during the plea canvass whether he could decide to withdraw his plea. (Exh. 48 at 8-9.) While not entirely clear, Williams' concern seemed to be about how much credit he would receive for time served. (*Id.*) In any event, the state district court clearly informed him that he could "not necessarily" withdraw his guilty plea, and that he would have to file a motion for the court to consider. (*Id.* at 9.)

Subsequently, Williams moved the court for trial counsel to be withdrawn and to withdraw his guilty plea. (Exh. 51.) At a hearing, counsel informed the court that he, Williams and the prosecutor reviewed the entire plea agreement and all of the ramifications for about two hours the day before Williams entered his guilty plea. (Exh. 51 at 5-6.) Williams disputed that they spent that long and stated that his counsel told him if he did not take the plea he would get a life sentence and a consecutive life sentence for weapon enhancement. (*Id.* at 6.) Williams later testified at the evidentiary hearing when his first state postconviction petition was remanded for the single issue of whether he knowingly and voluntarily pleaded guilty to the child abuse and neglect count. (Exh. 118 at 15-33.) He testified that he had faced counts of attempted murder, mayhem, child abuse and neglect, and first-degree kidnapping. (*Id.* at 15.) He testified that his counsel told him that he was in a "no-win" situation and that if he did not take

///

the plea deal he was going to spend the rest of his life in prison because the jury was not going to believe him. (*Id.* at 16.)

With respect to Williams' allegations that his counsel was ineffective for failing to investigate the case, he argues that further investigation would have revealed: (1) that the victim had a violent criminal history; (2) that Williams' blood was found at the crime scene supporting his claim that the victim attacked him first; and (3) that Williams worked for the same company as the victim, which would rebut her testimony that he stalked her at work. (Dkt. no. 25 at 17-18.)

The Nevada Supreme Court explained:

> [A]ppellant claimed that trial counsel was ineffective for failing to investigate the case. Appellant claimed that trial counsel never investigated the victim's background, police reports, or the reports of the Appellant's parole officer. Appellant asserted that the victim admitted that she cut appellant first with the knife, a fact demonstrated by the DNA report of the crime scene, and that the victim incorrectly testified at the preliminary hearing that appellant was stalking the victim at her workplace. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. At the preliminary hearing, appellant's trial counsel, in response to appellant's challenge to trial counsel's preparedness, stated that he had reviewed the discovery before the preliminary hearing. Nothing in the record supports appellant's allegation that the victim admitted to cutting appellant first in the attack. Even assuming that a crime scene report would show that appellant lost blood at the crime scene, this fact would not establish that the victim was the aggressor in the attack. The victim and one of the victim's daughters testified that appellant attacked the victim first by putting her in a chokehold and then stabbing her twenty times. Appellant further failed to demonstrate that any investigation regarding the victim's claim that he stalked her at her workplace would have had a reasonable probability of altering his decision to enter a guilty plea. Therefore, we conclude that the district court did not err in denying these claims.

(Exh. 113 at 4-5.)

Here, Williams claims that if his counsel had investigated the victim's background he would have discovered that she pled guilty in 2002 to battery with substantial bodily harm and pled guilty in 2004 for conspiracy to commit arson when she set fire to her ex-boyfriend's vehicle (neither incident involved Williams). (Dkt. no. 25 at 17-18.) He claims counsel had a forensic report that reflected that his blood was found at the crime scene

///

and he claims that he was not stalking the victim at work, he simply worked at the same company. (*Id.* at 18.)

At the preliminary hearing, the victim testified that Williams, her boyfriend, put her in a chokehold and stabbed her about twenty times in front of her eight and ten-year-old daughters. (Exh. 6 at 21-25.) Her daughter testified similarly. (*Id.* at 42-45.) The victim testified about the permanent and serious nature of several of her injuries, and the court noted for the record the numerous scars on her nose, under her eye, on her forehead, chin, hand, thumb, wrist, elbow, and forearm. (*Id.* at 29-31.) The victim testified to serious stabbing injuries to her legs, including a severed hamstring and severed nerve that left her permanently paralyzed from the knee down and in chronic pain. (*Id.* at 31-33.)

Williams has failed to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*. As set forth above, the record belies Williams' claim that his counsel failed to communicate with him. (*See, e.g.*, Exh. 6 at 8-9; Exh. 43 at 4-5, Exh. 118 at 6-14.) With respect to counsel's alleged failure to adequately investigate, Williams fails to demonstrate that there is a reasonable probability that, but for such failure, he would have pleaded not guilty and proceeded to trial. Even assuming Williams is correct about the victim's criminal history, his blood at the scene, and his employment at the same company as the victim, such facts would not establish that the victim was the aggressor or even contradict or challenge the credibility of the victim's or her daughter's testimony regarding the stabbing incident itself in any way. Accordingly, the Court denies federal habeas relief on ground 1(A).

In ground 1(B) Williams claims that his counsel, Frank Kocka, was ineffective during the proceedings to withdraw his guilty plea. (Dkt. no. 25 at 20-22.) Williams claims that counsel advocated against his interest when counsel informed the court that he had reviewed the guilty plea agreement and the canvass and had not identified any bases to allow Williams to withdraw his plea. (*Id.* at 20; Exh. 52 at 4.)

///

In affirming the denial of this claim in his state postconviction petition, the Nevada Supreme Court explained that while Williams claimed Kocka was ineffective for failing to talk to him, he failed to provide any specific facts or arguments in support of this claims. (Exh. 113 at 4.)

At a hearing on the motion to withdraw guilty plea, Kocka informed the court that he had reviewed the briefing on the motion, the guilty plea and the court's canvass and did not find any grounds that would allow Williams to withdraw his guilty plea. (Exh. 52 at 4.) Counsel acknowledged that during the canvass Williams had asked the court about the possibility of withdrawing a guilty plea, but also noted that the court had correctly informed Williams that he could "not necessarily" withdraw his plea but would have to file a motion for the court to consider. (*Id.* at 5.) The court then stated that having reviewed the briefing on the motion, the transcript of the canvass, the guilty plea agreement, and the entire procedural history of the case, it found no basis to even hold an evidentiary hearing on the issue of whether the plea was entered into knowingly and voluntarily. (*Id.* at 7-9.) The court denied the motion to withdraw guilty plea. (*Id.* at 9.) (*See also* Exh. 60 at 4-5.)

As discussed in this order, Williams never presented a meritorious basis to withdraw the entire guilty plea.[3] He therefore fails to show that counsel was ineffective with respect to the motion to withdraw. Williams cannot demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*. This Court denies federal habeas relief on ground 1(B).

**B.    Ground 2**

Williams claims that his appellate counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights. (Dkt. no. 25 at 22-23.) He

///

---

[3]Again, Williams was granted state postconviction relief and the conviction on count 7 was dismissed because neither the plea agreement nor the guilty plea canvass advised him that a psychosexual examination is required before probation is granted to a person convicted of child abuse and neglect. NRS §§ 200.508; 176A.100. The plea agreement and canvass correctly stated that all of the other counts are probationable.

12

argues that appellate counsel's legal argument on appeal was short and that counsel failed to communicate with him or send him copies of the briefs filed. (*Id.* at 23.)

In affirming the denial of this claim, the Nevada Supreme Court correctly observed that appellate counsel is not required to raise every non-frivolous issue on appeal and that, in fact, appellate counsel is more effective when he or she refrains from raising every conceivable issue on appeal. (Exh. 113 at 15.) The state supreme court stated that Williams failed to support this claim with any specific facts or argument and failed to "demonstrate that appellate counsel failed to set forth a specific argument that would have had a reasonable probability of success on appeal." (*Id.* at 15-16.)

Williams now points to a letter that he sent to the Nevada Supreme Court as well as a bar complaint that he filed against appellate counsel, both of which reflect his complaint that appellate counsel failed to provide copies of filings and failed to keep him apprised of the status of his case. (Exhs. 69, 71, 72.)

However, these letters do not demonstrate that the Nevada Supreme Court's conclusion that Williams had failed to show that his appellate counsel failed to set forth any specific argument that would have had a reasonable probability of success on appeal was an unreasonable application of *Strickland*. Accordingly, this Court denies ground 2.

**C.     Ground 3**

Finally, in ground 3 Williams contends that he did not enter his guilty plea knowingly, intelligently and voluntarily, in violation of his Fifth and Fourteenth Amendment due process rights. (Dkt. no. 25 at 23-28.)

In order for a guilty plea to be voluntary and knowing — and thus satisfy due process — the defendant must have notice of the charges against him, including the elements of each crime, he must understand the constitutional rights that he is waiving, and he must understand the consequences of his plea, including the range of allowable punishments. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). "A plea

is voluntary if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A totality of the circumstances test is used to determine whether the plea is voluntary and intelligent. *Brady v. United States*, 397 U.S. 742, 749 (1970).

On direct appeal, Williams claimed the trial court had erred in denying his motion to withdraw his guilty plea because he did not understand the consequences of pleading guilty and his attorney did not adequately explain the consequences of the plea. (Exh. 67 at 5-6.) Affirming the convictions, the Nevada Supreme Court stated that in deciding whether to grant a motion to withdraw guilty plea, a district court must consider the totality of the circumstances in order to determine whether the defendant entered the plea voluntarily, knowingly, and intelligently. (Exh. 70 at 3.) The state supreme court concluded:

> During the canvass in the instant case, Williams informed the district court that he had read and understood the plea agreement, that he had signed the plea agreement, and he admitted committing the crimes charged. Williams further informed the court that he understood each of the charges against him, and the district court informed Williams of the possible sentence for each count. Williams asked whether he would be allowed to withdraw his plea if he changed his mind, and the district judge explained that he could file a motion to withdraw his plea, but that the motion would not necessarily be granted. Based on the totality of the circumstances, we conclude that the district court correctly found that Williams's plea was validly entered.

*Id.* at 3-4.

As discussed in ground 1, Williams also raised the related ineffective assistance of counsel claim in his state postconviction petition, arguing that his guilty plea was not knowing, intelligent or voluntary because his counsel failed to explain the nature of the offenses or consequences of the plea. (*See* Exh. 113.)

As set forth above with respect to ground 1, the record shows that ground 3 lacks merit. Williams was thoroughly canvassed when he entered his guilty plea, and he indicated that he pleaded guilty knowingly and voluntarily; the court set out the potential sentences Williams faced, and he indicated that he understood. (Exh. 48.) He signed

the written guilty plea agreement, which also reflected that he pleaded guilty knowingly and voluntarily; the agreement also set forth the potential sentences. (Exh. 47.) Petitioner asked the court during the plea canvass whether he could decide to withdraw his plea, which appeared to reflect a concern about credit for time served. (Exh. 48 at 8-9.) The state district court clearly informed him that he could "not necessarily" withdraw his guilty plea, and that he would have to file a motion for the court to consider. (*Id.* at 9.) Williams thereafter continued to express that he understood and agreed to the guilty plea agreement for the remainder of the canvass proceedings. (*Id.* at 9-15.)

Respondents point out that the court specifically questioned Williams during the canvass as to whether he understood the ranges of punishment and specifically questioned him as to whether he understood the deadly weapon enhancement for each of the two counts of attempted murder as well as the mayhem charge. (*Id.* at 5-6.) Williams never expressed confusion about the guilty plea, the crimes charged, the rights he was waiving, or the consequences of the plea. (*See generally id.*)

Williams has failed to demonstrate that the Nevada Supreme Court's decision on this claim is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Further, in ground 3 Williams argues that he was not mentally competent to understand the nature of the plea bargain. (Dkt. no. 25 at 24.) He claims that his trial counsel Wommer arranged a psychological examination, and the examination found that Williams was suffering from mental illness, which could impact his ability to cooperate with and assist counsel in representing Williams. (*Id.*)

This Court agrees with respondents that this claim is unexhausted. (Dkt. no. 45 at 18-19.) Moreover, the record reveals that this contention is meritless. Williams includes as an exhibit a psychological exam dated July 25, 2004. (Exh. 169.) However, that report specifically concludes the following: Williams was able to distinguish between

right and wrong and comprehended the nature of the act for which he was charged and understood he was acting in violation of the law at the time of the incident. (*Id.* at 9.) Williams also was competent to understand the nature of the charges against him, to aid his counsel in his defense and at sentencing, and to intelligently waive his right to testify. (*Id.* at 9-10.)

This Court may deny an unexhausted claim on its merits. 28 U.S.C. § 2254(b)(2). The state-court record, as well as the psychological report Williams offers here, demonstrate that he was found competent. (*See* Exh. 41 at 3; Exh. 169.) Even assuming that Williams suffers from mental illness, his claim that he lacked competency to knowingly and intelligently plead guilty lacks merit. Accordingly, ground 3 is denied.

The petition is, therefore, denied in its entirety.

## IV.     CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

///

## V. CONCLUSION

It is therefore ordered that the first-amended petition for a writ of habeas corpus (dkt. no. 25) is denied in its entirety.

It is further ordered that the Clerk shall enter judgment accordingly and close this case.

It is further ordered that petitioner is denied a certificate of appealability.

DATED THIS 30th day of September 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE